**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEREMY WOODS,** | : | |
| **Plaintiff,** | : | **Case No. 2:02-cv-762** |
| **v.** | : | **Judge Holschuh** |
| **CITY OF WELLSTON, et al.,** | : | **Magistrate Judge Abel** |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM & ORDER**

Following his arrest, Plaintiff Jeremy Woods filed suit against the City of Wellston, five Wellston police officers, its former police chief, and other city officials, seeking relief pursuant to 42 U.S.C. §§ 1983 and 1985(3) for alleged violations of his constitutional rights. He also brought state law claims of negligent and intentional infliction of emotional distress, negligent hiring, supervision, investigation, training, and retainment, and a claim of malicious prosecution. This matter is currently before the Court on Defendants' motion for summary judgment. (Record at 21). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.      Background and Procedural History**

In the early morning hours of May 12, 2001, Plaintiff Jeremy Woods, then age 19, was arrested by Wellston police officers. Plaintiff had been drinking beer at a party that evening with his friend, Charlie Hively, then age 16. Police officers John "Danny" Hall and John Robinson observed the young men jog across Pennsylvania Avenue toward the house of Jessie Stephens, another friend. Plaintiff sat on the porch. Hively knocked on the door, but no one answered.

The officers stopped their cruiser.  Officer Robinson asked Hively to approach the car.  Officer Hall exited the cruiser, approached Plaintiff on Stephens' front porch, and asked him how much he had been drinking.  When Plaintiff asked Hall to repeat the question, Hall told Plaintiff to walk toward the cruiser.  The parties dispute what happened next.

According to Plaintiff, he began walking toward the cruiser as requested.  Officer Hall told him that he was under arrest for underage consumption.  Plaintiff claims that Hall then slammed him against the police cruiser and attempted to handcuff him.  (Pl. Dep. at 74).  Hall got one cuff on and then threw him down in the grass, forcibly knelt on his back and held his face to the ground.  (Id. at 78).  Hall then asked John Robinson to assist him.  Robinson also knelt on Plaintiff's back and the officers were able to finish handcuffing Plaintiff.  They then shackled him, stood him up next to the car, and placed him into the rear seat of the cruiser.  (Id. at 75; Pl. Aff. ¶¶ 7-10).

By this time, Wellston police officers Larry McKenzie, Rex Stroth, and Michael Perkins had arrived on the scene.  Plaintiff began yelling and kicking the car door, trying to get the attention of the officers so that someone would contact his family.[1]  (Pl. Dep. at 75; Pl. Aff. at ¶ 11).  According to Plaintiff, Officers McKenzie and Stroth pulled him from the cruiser and threw

---

[1] On the date of Plaintiff's arrest, he was living with his grandmother, Dee Denny, and her husband, Don Denny.  Mr. Denny had filed a § 1983 lawsuit against the City of Wellston, its police chief, and Officer Timothy Wallin, alleging that Wallin had raped his fourteen-year-old daughter.  That suit, which was later settled, was still pending at the time of Plaintiff's arrest.  At approximately 1:45 a.m. on the morning of Plaintiff's arrest, Ms. Denny received an anonymous phone call from a male caller who threatened that "if Don Donny does not keep his mouth shut, he will end up getting shot."  (Denny Aff. ¶ 4).  Ms. Denny speculates that the caller was a Wellston police officer and that the officers physically assaulted her grandson in order to intimidate her family, and to retaliate against them for filing the suit exposing police corruption and misconduct in the City.

him, facedown, into the street. The officers then allegedly picked him up and bent him over the

trunk of the cruiser, holding him down by his neck. Plaintiff claims that they slammed his head

into the trunk of the car two or three times and pressed a baton against the pressure point behind

his right ear, causing excruciating pain. (Pl. Dep. at 75; Pl. Aff. at ¶¶ 12-14). Plaintiff denies

that he resisted arrest or threatened to harm himself or any of the officers. (Pl. Aff. ¶ 15).

Defendants' version of what happened is quite different. According to Officer Hall, after

he placed one handcuff on Plaintiff, Plaintiff jerked away and tried to get away. (Hall Dep. at

39). Officer Robinson helped him finish handcuffing Plaintiff. (Id. at 43). Plaintiff then asked

Officer Hall, "Did you hear that?" Officer Hall said, "Hear what?" Plaintiff said "Voices."

Plaintiff then began yelling and voluntarily "banging his head off the cruiser," hard enough to

dent the trunk lid. (Id. at 43, 45-46). The officers held his head against the cruiser to protect him

from injuring himself. (Hall Dep. at 48; Robinson Dep. at 17). When they let go and he tried to

bang his head on the car again, they moved him to a grassy area. (Hall Dep. at 50). When

Plaintiff began banging his head on the ground, and kicking at the officers, they knelt on him,

held his head down, and shackled him. (Id. at 60-61; Robinson Dep. at 19-22).

After they placed him in the rear of the cruiser, Plaintiff began kicking the door, hard

enough that the door was bowing outward. (Robinson Dep. at 24). Officer Stroth removed

Plaintiff from the cruiser and escorted him to the rear of the vehicle. (Stroth Dep. at 14). Stroth

claims that when he bent Plaintiff over the back of the vehicle, Plaintiff again forcefully hit his

own head against the trunk of the cruiser. (Id. at 16). Stroth and McKenzie held his head against

the trunk so that he would not injure himself. (Id. at 17). They continued to hold him there

until he calmed down. (McKenzie Dep. at 26-27). The officers deny using a baton to apply

pressure to Plaintiff's head or neck.  (Id. at 27; Stroth Dep. at 17).

It is undisputed that the officers then placed Plaintiff in the back of the cruiser, and issued a summons charging him with disorderly conduct by intoxication and ordering him to appear in court on May 16, 2001.  Officers Stroth and Robinson transported him to the Jackson County Correctional Facility, where he was held for 8 hours before being released.  On the way to the jail, Plaintiff told the officers that he was going to sue the city for "beating the shit out of him." (Stroth Dep. at 19).

While at the county jail, at Plaintiff's request, booking officers Nathan Moore and Roger Ewing, Jr. took photographs of Plaintiff's scrapes, bruises, and abrasions, but offered him no medical treatment.  After being released from jail the morning after his arrest, Plaintiff went to the hospital where they mapped his injuries.

That same day, Plaintiff filed a complaint of excessive force with Detective James Mannering of the Jackson County Sheriff's Office.  Plaintiff alleged that the Wellston police officers had beat his head against the trunk of the cruiser and physically assaulted him. Mannering contacted Wellston Mayor John Stabler and Service Director Gary George about Plaintiff's allegations.  Stabler, George, and Police Chief Mark Jacobs had a short meeting with the officers who were on the scene.  However, no other investigation took place and no disciplinary action was taken against any of the officers.

Plaintiff pled not guilty to the charge of disorderly conduct and the case was scheduled for trial on August 15, 2001.  On the advice of counsel, Plaintiff intended to plead no contest to that one charge.  On the day of trial, however, Plaintiff was notified that he had also been

indicted on charges of criminal damaging, resisting arrest, and persistent disorderly conduct. Plaintiff claims that because he had no time to prepare a defense, he decided, on the advice of counsel, to plead guilty to all charges, in order to avoid jail time, even though he did not commit the additional crimes alleged.

Plaintiff filed suit on August 2, 2002 against: the City of Wellston; Police Officers John Hall, Larry McKenzie, Michael Perkins, John Robinson, and Rex Stroth; former Police Chief Mark Jacobs; Service Director Gary George; and Mayor John Stabler.  Plaintiff sought relief under 42 U.S.C. §§ 1983 and 1985(3) for alleged violations of his constitutional rights.  He also brought claims of negligent and/or intentional infliction of emotional distress, negligent hiring, supervision, investigation, training, and retainment, and a claim of malicious prosecution. Defendants have moved for summary judgment on all claims.

## II.     Standard for Granting Summary Judgment

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467

(1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also

Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

 Moreover, the purpose of the procedure is not to resolve factual issues, but to determine

if there are genuine issues of fact to be tried.  Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir.

1978).  The court's duty is to determine only whether sufficient evidence has been presented to

make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

 In a motion for summary judgment, the moving party bears the initial burden of showing

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter

of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as

well as inferences to be drawn from the underlying facts, must be considered in the light most

favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001).

Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to

material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress

& Co., 398 U.S. 144, 157-60 (1970).

 "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  A

"material" fact is one that "would have [the] effect of establishing or refuting one of [the]

essential elements of a cause of action or defense asserted by the parties, and would necessarily

affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The nonmoving party must demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings."  Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a

verdict in favor of the nonmoving party based on the presented evidence.  <u>Anderson</u>, 477 U.S. at

251-52; <u>Lansing Dairy, Inc.</u>, 39 F.3d at 1347.

## III.  Discussion

### A.    Federal Claims

#### 1.    42 U.S.C. § 1983

In Count I of his Complaint, Plaintiff alleges violations of his constitutional rights and

seeks relief pursuant to 42 U.S.C. § 1983.  Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

42 U.S.C. § 1983.  This statute "'is not itself a source of substantive rights,' but merely provides

'a method for vindicating federal rights elsewhere conferred.'"  <u>Graham v. Connor</u>, 490 U.S.

386, 393-94 (1989)(quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3 (1979)).  In order to

recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state

law, violated rights secured by the Constitution or laws of the United States.  <u>See Adickes v.</u>

<u>S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970).  Plaintiff claims that Defendants violated his rights

under the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiff seeks recovery under § 1983 against the City of Wellston, Officers Hall,

Robinson, Stroth, McKenzie and Perkins, Chief Jacobs, Gary George, and John Stabler.  Plaintiff

sued the arresting officers and Chief Jacobs in their official and individual capacities.

Defendants George and Stabler were sued in their official capacities only.  As the Supreme Court

8

noted in <u>Kentucky v. Graham,</u> 473 U.S. 159 (1985), a claim brought against a government employee in his or her *individual* capacity seeks to hold the employee personally liable for actions taken under color of state law.  However, a claim brought against a government employee in his or her *official* capacity is the equivalent of a claim brought against the governmental entity itself because, if the plaintiff succeeds, the judgment is paid by the governmental entity.  <u>Id.</u> at 165-66.

Government employees sued in their individual capacities may be entitled to qualified immunity.  According to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

The Sixth Circuit had adopted a three-step analysis to determine whether qualified immunity is available:

> First, while viewing the facts in the light most favorable to the plaintiff, the Court determines whether a violation of plaintiff's constitutional rights has occurred. Second, the Court asks if the violation "involved a clearly established constitutional right of which a reasonable person would have known."  Third, the Court determines if the plaintiff has offered evidence sufficient to show that the official's conduct was objectively unreasonable in light of the clearly established constitutional right at issue. A negative answer to any of the three questions means that the officer is entitled to qualified immunity.

<u>Gray v. City of Detroit</u>, 399 F.3d 612, 615 (6th Cir. 2005)(citing <u>Champion v. Outlook</u> <u>Nashville, Inc.</u>, 380 F.3d 893, 900-901 (6th Cir. 2004)).

The parties agree that Plaintiff's § 1983 claims brought against former Wellston Police

9

Chief Mark Jacobs in his individual capacity are governed by Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984). In that case, the Sixth Circuit held that a supervisor cannot be held personally liable under § 1983 on the basis of *respondeat superior*. A supervisor is subject to personal liability only if the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." Id. at 421. The supervisor must have "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [officers]." Id. (citing Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir. 1982)).

Plaintiff's § 1983 claims against the City of Wellston and against all defendants in their official capacities are governed by Monell v. Department of Social Services, 436 U.S. 658 (1978). While a governmental entity may be considered a "person" for purposes of § 1983, it cannot be held liable for the acts of its employees on a *respondeat superior* theory. Id. at 691. A governmental entity may be held liable for constitutional violations only if those violations are the result of an official policy or custom. Id. at 694. See also City of Canton v. Harris, 489 U.S. 378, 389 (1989)(official policy or custom must be the "moving force" behind the alleged constitutional deprivation); Hafer v. Melo, 502 U.S. 21, 25 (1991)(because the real party in interest in an official-capacity suit is the governmental entity, "the entity's 'policy or custom' must have played a part in the violation of federal law").

The existence of an official policy or custom may be proven in several ways. For example, legislative actions taken by a governmental entity constitute "official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Actions taken by a government employee with final decision-making authority may also constitute an official policy. Id. at 483. Even if there is no formal "policy," a governmental entity may be subject to

10

liability if a custom exists that causes a constitutional violation.  Id. at 481 n.10.  In City of Canton, the Supreme Court held that a governmental entity may also be held liable under § 1983 if its failure to adequately train employees "amounts to deliberate indifference to the rights of persons with whom the officers come into contact."  489 U.S. at 388.

A municipality may also be held liable under § 1983 for constitutional deprivations resulting from a failure to adequately investigate and respond to citizen complaints, or a failure to discipline employees who violate the constitutional rights of citizens.  In order to establish the requisite "deliberate indifference," a plaintiff must generally show a history of widespread abuse. Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th Cir. 1994); Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996).  As the Supreme Court explained in Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, "[p]roof of a single incident of unconstitutional activity" is insufficient to impose municipal liability unless that incident was caused by an policy which is itself unconstitutional.

With these general principles in mind, the Court will proceed to analyze Plaintiff's § 1983 claims based on alleged violations of the Fourth and Fourteenth Amendments.

### a.    Fourth Amendment Excessive Use of Force Claims

Plaintiff's Complaint alleges that "Defendants violated 42 U.S.C. § 1983 by infringing on Plaintiff's . . . constitutional right not to be subjected to the wanton infliction of physical harm by any person acting under color of state law."  (Compl. ¶ 24).  He characterizes his claim as one of "police brutality and use of excessive force."  (Id. at ¶ 1).  Because the facts that give rise to Plaintiff's claim occurred during the course of his arrest, his claim is governed by the Fourth Amendment to the United States Constitution; the Fourth Amendment protects against unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 395 (1989).

11

### 1.  Evidentiary Issues

The Court must first decide what evidence should be considered in determining whether genuine issues of material fact preclude summary judgment on this claim.  In their reply brief, Defendants urge the Court to disregard those portions of Plaintiff's affidavit that contradict his earlier deposition testimony.  It is true that "[a] party may not create a factual issue by filing an affidavit after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony."  Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986)(citing Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984)).

There is at least one statement in Plaintiff's affidavit that directly contradicts his earlier deposition testimony, and will, therefore, be disregarded.  Plaintiff admitted at his deposition that he kicked the door and window of the cruiser hard enough to cause damage to the door.  (Pl. Dep. at 86-87).  However, his affidavit states that he "did not apply enough force to the window to damage the door."  (Pl. Aff. ¶ 11).

Defendants also note that during Plaintiff's deposition, he never said anything about the officers banging his head into the trunk of the cruiser.  Instead, he testified that after he was pulled from the cruiser for kicking the door, the officers "[t]hrew me up on the back of the car, held me there for about two minutes."  He claimed that he had no further contact with the cruiser.  (Pl. Dep. at 148-49).  In his affidavit, however, Plaintiff claims that the officers "banged [his] head forcefully into the trunk of the cruiser two-to-three times in quick succession."  (Pl. Aff. ¶ 13).

In the Court's view, this statement does not necessarily contradict Plaintiff's deposition

testimony.  He was never specifically asked, and never specifically denied that the officers

banged his head into the trunk.  A finding that the officers banged his head into the trunk is not

necessarily inconsistent with his statement that they threw him up on the back of the car.   While

the Court agrees that Plaintiff's failure to mention the alleged head-banging -- arguably the most

egregious allegation of excessive use of force -- is somewhat suspect, this omission would go to

the weight of his testimony rather than its admissibility.  The Court further notes that Plaintiff's

claim of head banging is not a brand new allegation created in response to the motion for

summary judgment.  Detective Mannering testified that when Plaintiff filed his complaint of

excessive use of force on the day after the arrest, Plaintiff told him then that the officers "beat his

head off the trunk of the car."  (Mannering Dep. at 6).

   Plaintiff's affidavit also states that after the officers banged his head into the trunk, one of

them applied the baton to his ear while he was bent across the trunk lid (Pl. Aff. ¶ 14); however,

he testified at his deposition that it was applied while he was still on the ground after having

been removed from the cruiser.  (Pl. Dep. at 91).  Even if this minor discrepancy does create a

factual issue, it is not a material one.  Either way, Plaintiff alleges that an officer applied the

baton after he was already handcuffed and shackled.  In determining whether this constituted an

excessive use of force, it would not matter whether he was on the ground or bent across the trunk

at the time.

   Finally, Defendants note that Plaintiff's affidavit states that he was nearly knocked

unconscious when Officers Hall and Robinson took him to the ground.  (Pl. Aff. ¶ 9).  Again, the

Court finds that this statement does not contradict his deposition testimony.  Plaintiff testified

that once he arrived at the jail he "stayed up a little confused.  I had a concussion."  He did

13

admit, however, that no doctor told him that he had suffered a concussion.  (Pl. Dep. at 35).

## 2.  Qualified Immunity for Arresting Officers

Plaintiff has sued each of the Wellston police officers who was present during the course of his arrest – Officers Hall, McKenzie, Perkins, Robinson, and Stroth – in their individual capacities.  Plaintiff contends that the defendant officers engaged in an excessive use of force on five separate occasions during the course of his arrest: (1) slamming him against the cruiser to handcuff him; (2) throwing him to the ground and forcefully kneeling on his back; (3) removing him from the rear seat of the cruiser and throwing him face-first into the street; (4) banging his head against the trunk of the cruiser; and (5) applying the baton behind his ear.

The officers claim that they are entitled to qualified immunity.  For the reasons set forth below, the Court concludes that Officer Michael Perkins is entitled to summary judgment on qualified immunity grounds, but the other officers are not.

The first question in the qualified immunity analysis is whether, viewing the facts in the light most favorable to Plaintiff, Defendants violated Plaintiff's constitutional rights.  The undisputed evidence shows that Officer Michael Perkins had no physical contact with Plaintiff during the course of the arrest.  As soon as he arrived on the scene, he directed his attention to Charlie Hively, and he remained with Hively throughout the incident in question.  (Perkins Dep. at 33).  Plaintiff has not alleged that Perkins played any part in the alleged excessive use of force.  Since there is no evidence that Officer Perkins engaged in any conduct that would have violated Plaintiff's Fourth Amendment rights, the Court finds that he is entitled to qualified immunity.

The other officers, however, did have physical contact with Plaintiff during the course of

14

the arrest.  In Graham v. Connor, 490 U.S. 386 (1989), the United States Supreme Court set forth

the appropriate analysis to be used in determining whether a particular seizure is "reasonable"

under the Fourth Amendment.  The Court stated:

> Our Fourth Amendment jurisprudence has long recognized
> that the right to make an arrest or investigatory stop necessarily
> carries with it the right to use some degree of physical coercion or
> threat thereof to effect it.  Because "[t]he test of reasonableness
> under the Fourth Amendment is not capable of precise definition
> or mechanical application," however, its proper application
> requires careful attention to the facts and circumstances of each
> particular case, including the severity of the crime at issue,
> whether the suspect poses an immediate threat to the safety of the
> officers or others, and whether he is actively resisting arrest or
> attempting to evade arrest by flight.
>
> The "reasonableness" of a particular use of force must be
> judged from the perspective of a reasonable officer on the scene,
> rather than with the 20/20 vision of hindsight . . . "Not every push
> or shove, even if it may later seem unnecessary in the peace of a
> judge's chambers," violates the Fourth Amendment. The calculus
> of reasonableness must embody allowance for the fact that police
> officers are often forced to make split-second judgments--in
> circumstances that are tense, uncertain, and rapidly
> evolving--about the amount of force that is necessary in a
> particular situation.
>
> As in other Fourth Amendment contexts, however, the
> "reasonableness" inquiry in an excessive force case is an objective
> one: the question is whether the officers' actions are "objectively
> reasonable" in light of the facts and circumstances confronting
> them, without regard to their underlying intent or motivation.

Id. at 396-97 (internal citations omitted).

Plaintiff contends that, viewing the factors set forth in Graham, the officers' use of force

was objectively unreasonable and violated his Fourth Amendment rights.  He was arrested for

underage consumption, not a serious crime.  Plaintiff claims that even though he was

cooperative, the officers slammed him against the police cruiser to handcuff him, then threw him

to ground, forcibly knelt on him and shackled him, later pulled him from the cruiser and threw him face-first into street, repeatedly banged his head on trunk of the cruiser, and applied a baton to the pressure point behind his ear, causing excruciating pain.  He denies that he was actively resisting arrest or attempting to flee.  He further claims that, at 130 pounds, he did not pose an immediate threat to the officers or anyone else.  Jessie Stephens, who was watching from his bedroom window, testified that he did not observe Plaintiff doing anything to resist arrest.  He also testified that he observed Officer Hall apply his baton to Plaintiff's ear, and observed Officers Stroth and McKenzie physically pounding Plaintiff's head into the trunk of the cruiser. (Stephens Aff. ¶¶ 6, 9-11).

Defendants, however, deny banging Plaintiff's head into the cruiser and deny using a baton on him.  They contend that they used no more force than needed to effectuate the arrest. Defendants claim that Plaintiff was intoxicated and was resisting arrest.  They argue that he placed himself at risk by banging his head on the cruiser and on the ground, and placed the officers at risk by kicking at them and engaging in other violent behavior.

The question of whether the officers' conduct was "objectively reasonable" is relevant not only to a determination of whether a Plaintiff's Fourth Amendment rights have been violated; as discussed above, it is also the third prong in the qualified immunity inquiry.  In Saucier v. Katz, 533 U.S. 194 (2001), however, the Supreme Court cautioned that the question of whether a defendant is entitled to qualified immunity cannot be fused with the question of whether excessive force was used.  Id. at 197.  To submit both questions to a jury simply because the questions of objective reasonableness are intertwined defeats the purpose of qualified immunity.  If the officer correctly perceives the relevant facts but has a mistaken, yet reasonable,

belief concerning whether his use of force is acceptable, then the officer is entitled to qualified

immunity.  Id. at 205-06.

This, however, is not such a case.  As Justice Ginsburg noted in her concurring opinion,

which was joined by Justices Stephens and Breyer:

> Of course, if an excessive force claim turns on which of two
> conflicting stories best captures what happened on the street,
> Graham will not permit summary judgment in favor of the
> defendant official.  And that is as it should be.  When a plaintiff
> proffers evidence that the official subdued her with a chokehold
> even though she complied at all times with his orders, while the
> official proffers evidence that he used only stern words, a trial
> must be had.

Id. at 216 (Ginsburg, J., concurring).  The Sixth Circuit has also held "[w]here . . . the legal

question of qualified immunity turns upon which version of facts one accepts, the jury, not the

judge, must determine liability."  Sova v. City of Mount Pleasant, 142 F.3d 898, 903 (6th Cir.

1998).  Where the exact character of the defendant's actions are in dispute, "the jury becomes the

final arbiter" of the claim of qualified immunity.  Adams v. Metiva, 31 F.3d 375, 387 (6th Cir.

1994).  See also Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir. 1993)("if genuine

issues of material fact exist as to whether the defendants actually did commit acts that would

violate a clearly established right, then summary judgment on qualified immunity is improper").

In this case, Plaintiff and Defendants have very different views of what transpired during

the course of Plaintiff's arrest.  If Plaintiff's allegations are true, then a jury could easily find that

the officers' conduct was objectively unreasonable.  If the officers are to be believed, however,

then they may well be entitled to a jury verdict in their favor.  Because there are genuine issues

of material fact concerning what the officers did during the course of Plaintiff's arrest, the Court

finds that they are not entitled to summary judgment on qualified immunity grounds with respect

to Plaintiff's claims of excessive use of force.

### 3.  Supervisory Liability of Chief Jacobs

Plaintiff also seeks to hold former Wellston Police Chief Mark Jacobs personally liable for the alleged excessive use of force.  As noted above, supervisors may not be held personally liable under § 1983 on the basis of *respondeat superior*.  A supervisor is subject to personal liability only if the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it."  Bellamy, 729 F.2d at 421.

Plaintiff does not contend that Chief Jacobs was present during the course of his arrest or directly participated in it.  Neither does Plaintiff allege that Chief Jacobs encouraged the officers to arrest him or to use excessive force against him.  Absent any proof that Chief Jacobs directly participated in the arrest or specifically encouraged the officers to violate Plaintiff's constitutional rights on the night in question, the Court concludes that Chief Jacobs is entitled to summary judgment on Plaintiff's § 1983 claim brought against him in his individual capacity.

### 4.  Municipal Liability

This brings us to the claims brought against the City of Wellston and against all other defendants in their official capacities.  As discussed earlier, a municipality may not be held liable under § 1983 on the basis of *respondeat superior*.  An official custom or policy of the municipality must have been the "moving force" behind the alleged constitutional violation.  A failure to train, supervise, or discipline employees may subject a municipality to liability if the alleged failure constitutes "deliberate indifference" to the constitutional rights of its citizens.

In this case, Plaintiff claims that "Defendants failed to properly train, supervise Defendant officers and investigate incidents of misconduct against Defendant officers."  (Compl.

18

¶ 23). He further alleges that "Defendants City, George, Jacobs and Stabler knew or should have known about Defendant officers' propensity to engage in excessive force and failed to properly investigate reports of their misconduct and take effective, corrective action to ensure public safety." (Id. at ¶ 25). As Defendants note, Plaintiff's Complaint does not allege that these failures amounted to "deliberate indifference" to the rights of the citizens of Wellston.

Based on the evidence presented, no reasonable jury could find the City of Wellston liable under § 1983 on a "failure to train" theory. In order to prevail on a "failure to train" theory, Plaintiff must prove that: (1) the training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the city's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the alleged excessive use of force. See Russo v. City of Cincinnati, 953 F.2d 1036, 1046 (6th Cir. 1992).

Chief Jacobs testified that all Wellston police officers were required to complete the Ohio Peace Officer Training Academy. The department also provided supplemental in-house training and many officers took advantage of additional outside training opportunities. (Jacobs Dep. at 31-38). Plaintiff has failed to articulate how this training was objectively inadequate to prepare the officers to perform their duties. Plaintiff has also failed to establish any kind of causal connection between the alleged failure to train and the constitutional injuries he allegedly suffered. Finding no genuine issue of material fact, the Court concludes that Defendants are entitled to summary judgment on the "failure to train" claim.

Plaintiff also claims that Defendants failed to adequately supervise the officers, to investigate complaints of their misconduct, and to take corrective action. As the Court

understands Plaintiff's claim, Plaintiff alleges that: (1) the City failed to adequately investigate his own complaint of excessive use of force and failed to discipline the arresting officers; and (2) the City had a policy of ignoring citizen complaints involving an excessive use of force, and of failing to discipline officers who engaged in an excessive use of force.

Plaintiff first contends that the City failed to conduct an adequate investigation into his complaint of excessive force. The day after he was arrested, Plaintiff went to see Detective James Mannering of the Jackson County Sheriff's Office. Plaintiff told him that the Wellston police officers had "beat his head off the trunk of the car," and "drug him down the sidewalk." (Mannering Dep. at 7). Plaintiff asked Detective Mannering to look into his allegations. That same day, Mannering phoned Mayor Stabler and Service Director Gary George.

The following morning, Stabler, George, and Jacobs briefly met with the officers involved in Plaintiff's arrest to discuss the allegations. They asked the officers to describe what had happened. (Robinson Dep. at 37; Hall Dep. at 131). The officers denied Plaintiff's allegations and claimed that Plaintiff banged his own head on the trunk and they held him down to prevent him from further injuring himself. (George Dep. at 60). Mayor Stabler testified that, after listening to the officers and reviewing their written statements, they concluded that no excessive force had been used. (Stabler Dep. at 35). Officer Robinson testified that he left the meeting believing that the City had decided that the officers had done nothing wrong. (Robinson Dep. at 39-40).

Gary George, Mayor Stabler, and John Hall all testified that they nevertheless believed that Detective Mannering was going to conduct a further investigation. (George Dep. at 38;

Stabler Dep. at 35; Hall Dep. at 134).  However, when Mannering met with George and Stabler a couple of days later, they told him that they had "already conducted their own investigation, and there's nothing to it."  (Mannering Dep. at 9).  They told Mannering not to talk to any of the officers involved unless Stabler, George or the City Law Director was present.  At that point, Mannering "put it on the back burner, and that's where it stayed."  (Id. at 17).

Even if Defendants failed to conduct a meaningful investigation into Plaintiff's complaint, this is not enough, standing alone, to establish municipal liability.  Once an individual's rights have been violated, a subsequent failure to conduct a meaningful investigation cannot logically be the "moving force" behind the alleged constitutional deprivation.  See Tompkins v. Frost, 655 F. Supp. 468, 472 (E.D. Mich. 1987)("[w]rongful conduct after an injury cannot be the proximate cause of the same injury"); Fox v. VanOosterum, 987 F. Supp. 597, 604 (W.D. Mich. 1997)(argument that decision not to investigate, made after alleged violation took place, somehow caused that violation, defies logic).  Therefore, to the extent that Plaintiff's claim against the City is based on the City's alleged failure to investigate his own complaint of excessive use of force, the City is entitled to summary judgment.

Plaintiff also claims that the City had a policy or custom of ignoring citizen complaints involving an excessive use of force, and of failing to discipline officers who engaged in an excessive use of force.  There is no evidence to support a finding that the City discouraged its citizens from filing written complaints.  In fact, the police department policy states that "Officers shall never attempt to dissuade any citizen from lodging a complaint against any officer of the Department.  Officers shall refer the citizen to the Chief of Police."  (Ex. 1 to Jacobs Dep., Denny v. City of Wellston, Case No. 2:00-cv-926).  Plaintiff notes that the City of Wellston had

21

a policy of not investigating citizen complaints of excessive use of force unless a formal, written complaint was filed. (Jacobs Dep. at 20). This requirement was imposed by the terms of the City's collective bargaining agreement. (Perkins Dep. at 64). Plaintiff has presented no authority to support a finding that the policy itself is unconstitutional.

Because this policy itself is not unconstitutional, municipal liability may not be imposed without a showing of a "history of widespread abuse that has been ignored by the City." Berry, 25 F.3d at 1354; Tuttle, 471 U.S. at 824. Plaintiff claims that there is a history of widespread abuse in Wellston, and that there is a genuine issue of material fact concerning whether the City's failure to investigate complaints of excessive use of force and discipline its officers constitutes deliberate indifference to the constitutional rights of its citizens. The Court disagrees.

In support of his claim, Plaintiff notes that Detective Mannering testified that Wellston police officers have a "reputation" for beating people up. However, Mannering also admitted that he has never witnessed such an incident and that his statement is based on hearsay, rumors, and speculation. (Mannering Dep. at 24, 29). Therefore, Mannering's statement cannot, and will not, be considered.

Plaintiff has presented no other evidence to support a finding that Wellston had a problem with police brutality, or that the City ignored any previous complaints – written or verbal -- of excessive use of force. While Plaintiff claims that the City "knew or should have known about Defendant officers' propensity to engage in excessive force," (Compl. at ¶ 25), there is no evidence that any of the arresting officers were the subject of any previous complaints.

22

In support of his claim, Plaintiff cites to the cases of <u>Clark v. Pena</u>, 2000 U.S. Dist.

LEXIS 6660 (W.D. Mich. April 27, 2000), <u>Fiacco v. Rensselaer</u>, 783 F.2d 319 (2d Cir. 1986),

<u>cert. denied</u>, 480 U.S. 922 (1987), and <u>Spell v. McDaniel</u>, 842 F.2d 1380 (4th Cir. 1987).  These

cases, however, are distinguishable from the case at hand because the plaintiffs in those cases

introduced evidence of previous citizen complaints that had been filed and either were not

investigated at all or were inadequately investigated.  The municipalities in those cases had

actual or constructive knowledge of the constitutional violations and failed to do anything to

correct them.

In this case, there is simply no evidence that previous complaints of excessive use of

force were ignored by the City of Wellston, or that officers that should have been disciplined

were not.  Absent any evidence of previous widespread abuse, Plaintiff cannot establish

deliberate indifference or the requisite causal connection.  Finding no genuine issue of material

fact, the Court concludes that the City of Wellston and all defendants sued in their official

capacities are entitled to summary judgment on Plaintiff's Fourth Amendment claims.

**b.** **Fourteenth Amendment Substantive Due Process Claims**

Plaintiff also alleges that Defendants infringed "upon Plaintiff's right to substantive due

process under the Fourteenth Amendment and his constitutional right not be [sic] subjected to

the wanton infliction of physical harm by any person acting under color of state law and his right

to medical treatment."  (Compl. ¶ 24).  This allegation contains two parts, one involving an

excessive use of force and one involving a denial of medical treatment.

Citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998), Plaintiff argues that his

excessive use of force claim should be analyzed not only under the Fourth Amendment

23

"objective reasonableness" standard set forth in Graham v. Connor, but also under a Fourteenth

Amendment substantive due process "shocks the conscience" standard. Lewis, however, is

inapplicable to this case. In Lewis, a motorcycle passenger was killed during a high-speed

police chase. His parents filed suit under § 1983, alleging that his constitutional rights had been

violated. At issue was whether the claim should be analyzed as a Fourth Amendment claim or as

a substantive due process claim.

The Supreme Court noted that "[w]here a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims." Lewis, 523 U.S. at 842 (citing Graham, 490 U.S. at 395). In Graham,

the Court had held that all claims that officers had used excessive use of force during the course

of an arrest, investigatory stop, or other seizure must be analyzed under the Fourth Amendment's

"reasonableness" standard instead of the Fourteenth Amendment's Substantive Due Process

Clause. Graham, 490 U.S. at 395. The Court concluded in Lewis, however, that because the

Fourth Amendment did not apply to an attempted, but failed, seizure, it was appropriate to

analyze plaintiffs' claim as a Fourteenth Amendment substantive due process claim. 523 U.S. at

843-44.

This case, however, is clearly distinguishable. There is no question that Plaintiff was

actually "seized" during the course of his arrest. Because all of Plaintiff's allegations concerning

the excessive use of force arose in the context of this seizure, his claims must be analyzed solely

under the Fourth Amendment. Graham, 490 U.S. at 395. Therefore, to the extent Plaintiff seeks

relief under § 1983 for a substantive due process violation arising out of an excessive use of

force, Defendants are entitled to summary judgment on this claim.

Plaintiff also claims that his substantive due process rights were violated when Defendants failed to provide him with medical treatment for his injuries.[2]  Failure to provide a pretrial detainee with medical care can constitute a substantive due process violation if it rises to the level of deliberate indifference.  See Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001).  In order to succeed on this claim, Plaintiff must prove that: (1) his medical needs were "sufficiently serious;" and (2) defendants possessed "a sufficiently culpable state of mind in denying medical care."  Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004).  Plaintiff's claim fails on both accounts.

In Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001), the Sixth Circuit held that there is no substantive due process violation absent a showing that the deprivation of medical treatment for a pretrial detainee posed "substantial risk of serious harm."  Plaintiff alleges that as a result of the excessive force used against him during the course of his arrest, he suffered scrapes, bruises and abrasions on his face, his arms, his knee, his shoulders and back, and his right foot.  (Pl. Dep. at 43).  He also claims that he suffered a concussion when he was thrown to the ground, but admits that no doctor ever diagnosed such a condition.  (Id. at 35).  After being released from the jail the morning following his arrest, Plaintiff went to the hospital and was examined by a doctor.  The hospital mapped his injuries, but there is no evidence that he was treated for any of them.  Plaintiff denied being dizzy, having blurred vision or ringing in his

---

[2]  Defendants attempt to characterize this as an Eighth Amendment violation.  However, because Plaintiff was a pretrial detainee, his claim is governed by the Fourteenth Amendment's Substantive Due Process Clause, rather than by the Eighth Amendment.  See Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6th Cir. 2001); City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-45 (1983).

ears.  Medical records indicated that all of his motor skills were intact, he was alert and oriented, and moved all extremities without difficulty.  (Id. at 36-38).  Based on the evidence presented, no reasonable jury could find that Plaintiff was seriously injured or that Defendants' failure to provide Plaintiff with medical treatment while he was detained posed any "substantial risk of serious harm."

It is undisputed that, at Plaintiff's request, Nathan Moore and Roger Ewing, Jr., the intake officers at the Jackson County Correctional Facility took photographs of his alleged injuries.  In his memorandum in opposition to Defendants' motion for summary judgment, Plaintiff claims that because these intake officers were obviously aware of his injuries, this triggered a "duty to supply medical treatment upon request." (Mem. Opp'n to Mot. Summ. J. at 24).  There are two major problems with Plaintiff's argument.  First, there is no evidence that Plaintiff ever requested medical treatment for his injuries while at the Jackson County Correctional Facility.  (Moore Dep. at 55).  Second, to the extent that Plaintiff claims that Moore and Ewing failed to provide him with medical treatment, the Court notes that neither of them was named as a defendant in this lawsuit, nor was their employer, the Jackson County Sheriff.

To the extent Plaintiff may also claim that the arresting officers who are named defendants in this case failed to provide him with necessary medical treatment prior to transporting him to the Jackson County Correctional Facility, they are entitled to summary judgment on this claim.  As discussed above, there is no evidence that Plaintiff's injuries were severe enough to require medical treatment.  Even if Plaintiff's injuries did require medical treatment, there is no evidence that the arresting officers possessed a "sufficiently culpable state of mind in denying medical care." Blackmore, 390 F.3d at 895.  Officer Hall testified that he

26

saw no cuts, bruises, or other injuries on Plaintiff, (Hall Dep. at 130), and there is no evidence

that any of the other arresting officers were aware that Plaintiff was in need of medical treatment.

Based on the evidence presented, no reasonable jury could find that the arresting officers

violated Plaintiff's substantive due process rights by failing to provide him with medical

treatment.

Nor is there any basis for imposing personal liability on Chief Jacobs for failure to

provide medical treatment.  As discussed above, supervisors cannot be held personally liable

under § 1983 unless they "encouraged the specific incident of misconduct or in some other way

directly participated in it."  Bellamy, 729 F.2d at 421.  There is no evidence to support any such

finding.

Viewing the facts in the light most favorable to the plaintiff, the Court concludes that

Plaintiff's claim of excessive use of force must be analyzed under the Fourth Amendment and

not under the Due Process Clause of the Fourteenth Amendment, and that Plaintiff's evidence of

a failure to provide medical treatment does not rise to the level of a jury issue under the Due

Process Clause of the Fourteenth Amendment.  Defendants are therefore entitled to summary

judgment on all of Plaintiff's § 1983 claims based on alleged violations of his Fourteenth

Amendment rights.

### 2.        42 U.S.C. § 1985(3)

Also included in Count I of the Complaint, within the context of Plaintiff's § 1983 claim,

is the following paragraph:

> Defendants City, George Jacobs [sic] and Stabler knew or should
> have known about Defendant officers' propensity to engage in
> excessive force and failed to properly investigate reports of their
> misconduct and take effective, corrective action to ensure public

27

> safety.  Defendants' actions were aided by indicia of actual and
> apparent state authority.  Thereby, Defendants condoned the
> officers [sic] actions and engaged in a conspiracy to violate
> Plaintiff's civil rights under 42 U.S.C. § 1985(3).

Compl. ¶ 25.

To the extent that Plaintiff has attempted to assert an independent cause of action under

42 U.S.C. § 1985(3),[3] Defendants argue that summary judgment is appropriate for two reasons:

(1) the intra-corporate conspiracy doctrine bars the claim; and (2) Plaintiff has failed to establish

that the alleged conspiracy was motivated by a class-based animus.  In response, Plaintiff argues

only that his conspiracy claim falls within the "scope of employment" exception to the intra-

corporate conspiracy doctrine.  This exception "recognizes a distinction between collaborative

acts done in pursuit of an employer's business and private acts done by persons who happen to

work at the same place."  Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 840 (6th Cir. 1994).

Plaintiff completely fails to address Defendants' second argument, which is dispositive.

> To prevail on a § 1985(3) claim, one must prove "'(1) a
> conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of
> the laws, or of equal privileges or immunities of the laws; (3) an
> act in furtherance of the conspiracy; (4) whereby a person is either

---

[3]  42 U.S.C. § 1985(3) reads in relevant part as follows:

If two or more persons . . . conspire . . . for the purpose of depriving, either
directly or indirectly, any person or class of persons of the equal protection of the
laws, or of equal privileges and immunities under the laws . . . in any case of
conspiracy set forth in this section, if one or more persons engaged therein do, or
cause to be done, any act in furtherance of the object of such conspiracy, whereby
another is injured in his person or property, or deprived of having and exercising
any right or privilege of a citizen of the United States, the party so injured or
deprived may have an action for the recovery of damages occasioned by such
injury or deprivation, against any one or more of the conspirators.

> injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (quoting *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Moreover, the Supreme Court has stated that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005).

In this case, Plaintiff's Complaint is devoid of any claim that the alleged conspiracy was the result of class-based discrimination, and Plaintiff has presented no evidence to support such a finding. Because no reasonable jury could find that the alleged conspiracy was motivated by a class-based animus, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's § 1985(3) claim.

## B.    State Claims

In addition to the federal claims discussed above, Plaintiff asserts several state law claims. As discussed above, claims brought against Defendants in their official capacities are the equivalent of claims against the City of Wellston. See Duff v. Coshocton County, 5th Dist. No. 03-CA-019, 2004-Ohio-3713, at ¶ 18. The police officers and former Police Chief Jacobs were also sued in their individual capacities.

### 1.    Negligent or Intentional Infliction of Emotional Distress

Counts II and III of Plaintiff's Complaint allege that "Defendants owed Plaintiff a duty to refrain from negligently and/or intentionally injuring him," "Defendants' actions were extreme and outrageous, and breached that duty," and "Defendants' conduct caused injuries to Plaintiff in the form of physical injury, mental anguish, and other severe emotional distress."  (Compl. ¶¶

29

28-30).

Defendants have moved for summary judgment on these claims, arguing that they are statutorily immune from claims for negligent and intentional infliction of emotional distress.  In the alternative, Defendants argue that Plaintiff has failed to present sufficient evidence from which a reasonable jury could find in Plaintiff's favor on either claim.

### a.    Political Subdivision Immunity

Ohio Revised Code Chapter 2744, the Political Subdivision Tort Liability Act, provides statutory immunity for political subdivisions in actions for injury allegedly caused by an act or omission of the political subdivision or one of its employees in connection with a governmental or proprietary function.  Ohio Revised Code § 2744.02(A)(1).  While several exceptions are set forth in subsection (B) of that statute, Defendants argue that none of these exceptions applies.  Plaintiff does not dispute this.  Instead, he simply cites a section of Restatement (Second) of Agency:

> A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: (a) the master intended the conduct or the consequences, or (b) the master was negligent or reckless, or (c) the conduct violated a non-delegable duty of the master, or (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority or he was aided in accomplishing the tort by the existence of the agency relation.

Restatement (Second) of Agency § 219(2)(1958).

Common law agency principles, however, are clearly trumped by the Political Subdivision Tort Liability Act.  See Reno v. City of Centerville, 2d Dist. No. 20078, 2004-Ohio-781, at ¶ 53 ("[a] political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B)

30

applies").  Because Plaintiff's claims of negligent and intentional infliction of emotional distress do not fall within one of the statutory exceptions set forth in Ohio Revised Code § 2744.02(B), the City of Wellston is immune from suit and is entitled to summary judgment on these claims. This same immunity extends to all defendants sued in their official capacities.

**b.**  **Immunity of Political Subdivision Employees**

Employees of political subdivisions are also immune from personal tort liability unless their acts or omissions are manifestly outside the scope of their employment or were "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Revised Code § 2744.03(A)(6).  Plaintiff claims that because there are genuine issues of material fact concerning whether Wellston city employees acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," summary judgment is inappropriate.

As an initial matter, the Court agrees with Defendants that because Plaintiff's claim of *negligent* infliction of emotional distress falls outside the scope of this exception, Defendants are entitled to statutory immunity on the claim of negligent infliction of emotional distress.  See Wingrove v. Forshey, 230 F. Supp. 2d 808, 827 (S.D. Ohio 2002)("a police officer cannot be held personally liable for mere negligence," but only for actions that fall into one of the statutory exceptions set forth in § 2744.03(A)(6)).

This leaves the claim of intentional infliction of emotional distress.  The Court finds that, viewing the facts in a light most favorable to Plaintiff, a reasonable jury could find that the individual defendants acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Therefore, the Court will not grant summary judgment to the arresting officers on statutory immunity grounds.  Defendants are nevertheless entitled to summary judgment on

31

Plaintiff's claim of intentional infliction of emotional distress because Plaintiff has failed to

present sufficient evidence from which a reasonable jury could find that all required elements are

satisfied.  In order to succeed on this claim, Plaintiff must prove:

> (1) the defendant intended to cause emotional distress, or knew or
> should have known that his actions would result in serious
> emotional distress; (2) the defendant's conduct was so extreme and
> outrageous that it went beyond all possible bounds of decency and
> can be considered completely intolerable in a civilized community;
> (3) the defendant's actions proximately caused psychological
> injury to the plaintiff; and (4) the plaintiff suffered serious mental
> anguish of a nature no reasonable person could be expected to
> endure.

Eblin v. Corrections Med. Center, 158 Ohio App. 3d 801, 809-810, 822 N.E.2d 814, 820-821

(Ohio Ct. App. 2004).  Even if Plaintiff could establish the first three elements, no reasonable

jury could find, based on the evidence presented, that Plaintiff suffered "serious mental anguish."

In Paugh v. Hanks, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759, 765 (1983), the court held that

"serious emotional distress describes emotional injury which is both severe and debilitating."

Examples of serious emotional distress would include "traumatically induced neurosis,

psychosis, chronic depression, or phobia."  Id.  While it is useful to have testimony of a

physician who treated the alleged emotional distress, such testimony is not indispensable.  It may

be sufficient for friends and family members to testify concerning "significant changes they have

observed in the emotional or habitual makeup of the plaintiff."  Uebelacker v. Cincom Sys., Inc.,

48 Ohio App. 3d 268, 276, 549 N.E.2d 1210, 1220 (Ohio Ct. App. 1988).

In this case, Plaintiff testified that, as a result of the incident, he suffers from "emotional

depression."  He explained, "I was a very outgoing person.  I don't go anywhere no more.  Don't

see no one.  Talk to nobody.  Stay at home by myself.  I don't go out and interact with the other

young folks running around." (Pl. Dep. at 43). Plaintiff testified, however, that he has never

seen a psychologist or psychiatrist, and has never been treated by anyone for mental health,

emotional distress, or stress. (Id. at 14, 38). Plaintiff's friend, Jessie Stephens, testified that he

has seen "negative changes in his personality and view of society since this incident." (Stephens

Aff. ¶ 12). However, Stephens does not specify the nature or the extent of those changes.

Plaintiff's other friend, Charlie Hively, testified that he noticed nothing different about Plaintiff

after this incident. "He was just Jeremy. Same old . . ." (Hively Dep. at 31).

     In the Court's view, based on the evidence presented, no reasonable jury could find that

Plaintiff suffers from an emotional injury that is "severe and debilitating." Therefore, even

though Defendants may not be entitled to summary judgment on statutory immunity grounds,

they are nevertheless entitled to summary judgment on Plaintiff's claim of intentional infliction

of emotional distress.

     **2.**     **Negligent Hiring, Supervision, Investigation, Training, Retainment**

     Plaintiff asserts two claims of negligent hiring, supervision, investigation, training and

retainment. First, he claims that the City, Mark Jacobs, Gary George, and John Stabler breached

their duty to ensure that the Wellston police officers were "fit for duty, properly trained, and

supervised and did not intentionally or negligently inflict harm on third persons or use excessive

force in the performance of their official duties." (Compl., Count IV). Second, he claims that

the City, Stabler, and George were negligent in their "background investigation, selection,

hiring, training, supervision, investigation of complaints, discipline and retention of Police Chief

Jacobs." (Compl., Count V). Defendants claim that they are statutorily immune from liability

on both of these claims. In the alternative, they claim that Plaintiff has not presented sufficient

evidence to survive summary judgment.

As discussed above, with few exceptions, Ohio Revised Code § 2744.02(A) provides statutory immunity for political subdivisions.  Plaintiff does not dispute that the City of Wellston is statutorily immune from his claims of negligence.  The Court finds that the City is entitled to summary judgment on these claims on grounds of statutory immunity.  To the extent John Stabler, Gary George, and Mark Jacobs were sued in their official capacities, this same political subdivision immunity extends to them, and they are also entitled to summary judgment on Counts IV and V.

This leaves only the individual capacity claim against Mark Jacobs as set forth in Count IV of the Complaint.  Plaintiff alleges that Chief Jacobs breached his duty to ensure that the Wellston police officers were "fit for duty, properly trained, and supervised and did not intentionally or negligently inflict harm on third persons or use excessive force in the performance of their official duties."  As discussed above, employees of political subdivisions are immune from personal tort liability unless their acts or omissions are manifestly outside the scope of their employment or were "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Revised Code § 2744.03(A)(6).  Plaintiff alleges that because there are genuine issues of material fact concerning whether Jacobs acted maliciously, wantonly, or recklessly, summary judgment may not be granted.

The Court, however, need not decide whether summary judgment should be granted on grounds of  statutory immunity because, based on the evidence presented, no reasonable jury could find that Jacobs is liable for negligent training or supervision of the police officers.  In order to succeed on this claim, Plaintiff must prove that: (1) an employment relationship existed;

(2) the officers were, in fact, incompetent; (3) Jacobs had actual or constructive knowledge of their incompetence; (4) the officers' action caused injury to the plaintiff; and (5) Jacobs' negligence was the proximate cause of those injuries. The officers' conduct must have been foreseeable, i.e., Jacobs must have known (or should have known) of their "propensity to engage in similar criminal, tortuous, or dangerous conduct." Browning v. Ohio State Highway Patrol (2003), 151 Ohio App. 3d 798, 2003-Ohio-1108, 786 N.E.2d 94, at ¶ 63.

Plaintiff has not presented a shred of evidence to support a finding that the police officers were incompetent, or that Chief Jacobs had actual or constructive knowledge of such incompetence or of the defendant officers' propensity to engage in an excessive use of force. Chief Jacobs is therefore entitled to summary judgment on the claim of negligent training and supervision brought against him in his individual capacity.

### 3. Malicious Prosecution

In Count VI of Plaintiff's Complaint, he alleges that Defendants falsely and maliciously prosecuted him.[4] He claims that in order to avoid jail time, he pled guilty to criminal activity that he did not commit. (Compl. ¶¶ 42-43). Defendants urge the Court to grant summary judgment in their favor.

In order to succeed on a claim of malicious prosecution, a plaintiff must prove the following: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." Trussell v. General Motors Corp., 53 Ohio St. 3d 142, 559 N.E.2d 732 (1990), at syl. In this case, it is clear that the criminal

---

[4] Plaintiff also alleges that Defendants conspired to falsify reports to cover up the use of excessive force; however, he has presented no evidence to support this allegation.

prosecution was not terminated in Plaintiff's favor. Plaintiff argues that even though he pled guilty on all charges, the Court should still deny summary judgment since he was served with the indictments immediately before trial began and he had no opportunity to prepare a defense. Plaintiff, however, has offered no authority to support his position. As Defendants note, Plaintiff could have easily moved to continue the trial rather than plead guilty to charges he now claims were unfounded. Finding no genuine issue of material fact, the Court concludes that Defendants are entitled to summary judgment on the malicious prosecution claim.

**IV.     Conclusion and Trial Schedule**

Defendants' motion for summary judgment (Record at 21) is **GRANTED IN PART and DENIED IN PART**. For the reasons set forth above, Defendants are entitled to summary judgment on all of Plaintiff's claims except the § 1983 individual capacity claims against John Hall, John Robinson, Larry McKenzie, and Rex Stroth, alleging excessive use of force. Genuine issues of material fact preclude summary judgment on these claims.

A Final Pretrial Conference will be held on August 5, 2005 at 10:00 a.m. A Conference Prior to Trial will be held on September 2, 2005 at 10:00 a.m. and Trial will commence on September 6, 2005 at 9:00 a.m. Motions in limine, if any, will be filed no later than July 29, 2005; responses will be due on August 12, 2005; and replies will be due on August 19, 2005.

**IT IS SO ORDERED.**


Date: June 15, 2005                              **/s/ John D. Holschuh**
                                                 John D. Holschuh, Judge
                                                 United States District Court